The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Honorable Court. All right. Be seated, please. All right. First case we'll call this morning is Smiley v. Bhatnagar. And, Mr. Costello, I think you're up first. Good morning, and may it please the Court. My name is Tom Costello. I'm here with my partner, Ann Preston, and we represent the five appellants in this matter. The five appellants in this matter prior to January 2019 were the founders, majority shareholders, directors, and officers of a corporation known as Enphase. Plaintiffs filed a complaint alleging that Mr. Bhatnagar fraudulently induced them to turn over the management control of Enphase to him through a series of misrepresentations made over a months-long negotiation. Mr. Bhatnagar negotiated directly with You call them misrepresentations because they really were promises that he didn't comply with. Yes. The only way they became misrepresentations is if he never had the intent to comply, and that's not alleged. We do allege in the complaint that he acted with a fraudulent intent when he made those misrepresentations. That's a rather conclusory allegation. What are the specific facts that support misrepresentation related to the inducement? In the complaint, we pleaded alternatively. We say he made them intentionally and or negligently. Either way, you've got to plead, I think, at least to get past Twombly some facts that support those claims. You just can't say he lied to me. Well, his actions showed that he lied to him. His actions showed a breach of the promises made in the agreement. So what's the evidence that he actually never intended to perform those promises from the get-go? Well, I think the complaint spells out that the plaintiffs made the requirement that no convertible debentures be issued without a price floor time and time again in the negotiations, and Mr. Batnagar time and time again in those negotiations said he wouldn't do it, and then, in fact, signed a document that said he wouldn't do it in his individual capacity. He breached that agreement. So, again, I'm asking you, what is the evidence that he never intended to perform? That the issue was brought up repeatedly, and he made repeated assurances that he wouldn't do it, and with months of taking control of the company, he did it. Is that just repetition of a promise that he made? In other words, he says, I promise I'm going to do this, I promise, and that's totally consistent with the idea that he intended that. I think if someone is made clear to someone that you cannot do X, and he promises repeatedly not to do X, and then, based on those promises, he takes over control of the company and does X, and while he does X, continually lies about why he did X, then, yeah, that inference can be drawn from the complaint, and that isn't sort of the basis for Judge Grimm's decision in this case. The basis for Judge Grimm's decision in this case is that this is a derivative injury, not a direct injury. And you're right. I mean, he didn't rely on that ground, but, you know, we can, I guess we're not required to, affirm on any basis apparent in the record, and so my concern, and it appears that of my colleague, is that these allegations just appear to be rather conclusory and really don't allege anything more than a breach of an agreement, and the problem with that is that your clients weren't parties to that agreement and that the agreement itself suggests that it's the corporation and not the individual plaintiffs who have to bring that lawsuit. Well, I believe the allegations of the complaint make clear that they were fraudulently induced based on those oral representations. It's also not a defense that the appellees raised in response to the complaint, and I would point out in the complaint, we point out who said the misrepresentations, Mr. Battenegar, when he made the misrepresentations. Who was present when he made the misrepresentations? You keep calling them misrepresentations. I mean, at that time, they were framed as promises, and your clients relied on those promises. That's not a misrepresentation of fact. I think that's for the fact finder to determine because intent is a question of in fact. Tell me in the complaint, I read the whole complaint, and the only thing I read about fraud is that he was a conclusory statement there, but I didn't see any facts saying at the time he made those representations, he never intended it because of this or that, and some evidence suggests it's something that you could prove to say that his promise was totally manipulative and was never intended to be fulfilled, and he actually came later and probably provided some explanations as to why he did it or found it necessary to do it, but that all goes to the breach of contract aspect. Well, again, I mean, his actions allow the fact finder to make the determination that he acted with a fraudulent intent because when somebody brings up the issue multiple times before they commit, and then within months after committing. He could have said it 20 times. I promise, I promise, I promise. You can count on me. And the other guy says, I'm counting on you, and he signs this. Those documents are pretty peculiar. Your clients, I don't know, well, I don't want to comment. Right. So, well, I think his actions do support a finding of fraudulent intent. Well, the complaint. Give me a paragraph that you think. If you look at the allegations of the complaint, essentially from pages 14. Give me a paragraph. Your best paragraphs. 15. And then he goes on to continue to miss when the plaintiffs discover that he's done that. They go to him and they ask him, why have you done this? And again, he falsely states that. Don't worry. The debentures won't be exercised. We have money to pay that off. And that was another false statement because they didn't have money to pay him off, and the debentures were exercised. Well, the statements you allege there are just promises, right? You have alleged two statements. For the period of three years, Botninger would not cause M-Phase to engage in any sort of financing transactions. And Botninger would utilize future monies raised by the plaintiffs in private placements to satisfy outstanding liabilities. And he did not. He took the money and then he used it for something else. I mean, that's also evidence of a fraudulent intent. So with regard to that issue, again, that's not something that was raised by the defendant. It wasn't something that was adjudicated by Judge Grimm. Well, it's something on which you're relying, isn't it, to reverse the district court? We certainly feel like our clients have suffered a direct injury. No, my question is, is that something you're relying on, on this appeal, to reverse the district court? What I'm relying on in this appeal to reverse the district court is the allegations in the complaint that show direct misrepresentations were made to my clients. Yeah, okay. Fair enough. Okay. So in Judge Grimm's opinion, we feel like he made an error in saying that this didn't form the basis for a direct action. We feel that's error because Mr. Batnagar made these representations or misrepresentations to my clients directly. My clients, in reliance on those misrepresentations, ceded control of the company to him. They not only suffered- Set aside the fraud claim. Set aside the misrepresentation allegation. The district court basically concluded that your claim was grounded on contracts to which your clients were not party. They were contracts in which the corporation was the party. And that in order to allege damages caused to the corporations, you'd have to bring a derivative action. I think that's where the court was, wasn't it? I would respectfully disagree. Okay, well, clarify. Sure, because nowhere in Judge Grimm's opinion does he talk about the contract. Or does he say that my clients aren't a party to the contract or don't have a right to enforce the contract. Judge Grimm's analysis is simply, you're a shareholder. Part of your damage claim is loss of diminution of value. Therefore, you have to bring a derivative claim. And we feel that that's contrary to the New Jersey law that applies that specifically says a shareholder who was directly misrepresented by a director or officer of a company has a direct action against that individual. So Judge Grimm's opinion, in my rating of it respectfully, doesn't get into the contract at all. I think he did engage with these cases that you cited from New Jersey, but he concluded that those cases involved closely held companies and this was not. He did say that and that's something that we also feel respectfully that the trial court didn't quite get right because he doesn't cite any legal authority that defines what a closely held corporation is. He doesn't, there's no authority that says if it's not a closely held corporation, then it has to be and it's a public interest. What's your understanding of a closely, your understanding of a closely held corporation? The only definition that we found, okay, was in the IRS regulations, which indicates five or more people own a controlling interest in the company, which is exactly the situation and what we exactly alleged in the complaint. Well, but didn't you, I mean, didn't you allege that Enphase was a publicly held company? It is a publicly traded company. So those are two different things is what you're saying? Not necessarily, not according to the IRS. If it's a publicly traded company and five people own a majority stake in the company, then it's considered a closely held corporation. Even though there may be over 10,000 shareholders? If those other shareholders don't amount to a majority, then yes. That's not closely held. I mean, closely held seems to me at one point, one of your 10Ks, you had 23,000 shareholders. There are numerous shareholders, but there's no definition. A public company with 23,000 shareholders, you're arguing is a closely held company. If you apply the IRS regulation of five or more people controlling a majority interest. But, you know, when we look at the public policy reasons that require derivative litigation, there are basically three factors. One of those factors is that we don't want some shareholders benefiting from the assets of the corporation while other shareholders don't. They view that as unfair. This isn't the situation here because we're suing Mr. Batnagar individually. The other public policy consideration which requires derivative action is to make sure creditors of the corporation aren't treated unfairly. That's not the situation here because we are not trying to attack the assets of the corporation. The third consideration is the protecting the company from a multitude of suits. And there's absolutely been no allegation or evidence that's been presented that any other litigation has been brought other than by this core group of plaintiffs. So when you look at the public policy considerations that require derivative litigation, none of them are present here. Let me ask you this. Are the damages you're claiming the diminution in the value of the stock based on the conduct of Mr. Batnagar? That is one component of our damages. The damages we've alleged in the complaint are not only the diminution of the value of the stock. The loss of my client's salaries and fees as officers and directors. There are personal debt obligations that M-Phase owed to them, which they agreed to convert into equity based on Mr. Batnagar's misrepresentations. So there are multiple categories of damages. And the damages that have to do with the loss of the debt, loss of the salaries, loss of the fees are all personal and direct to my clients. I see that my time is up. Okay, you have some rebuttal, I believe. Yes, sir. All right, Ms. Wise. May it please the court. My name is Tamar Wise, and I represent the appellee on Mr. Batnagar. The district court correctly found that the claims in the amended complaint had to be brought derivatively on behalf of M-Phase. The narrative that appellants have provided to this court is simply an attempt to fit a square peg in a round hole, trying to justify how their clearly derivative claims can be brought directly. But the court needs only look at the actual allegations of the amended complaint, as the New Jersey Supreme Court requires in this analysis, to see that appellants have no standing to bring this case. Certainly the allegations that Mr. Batnagar engaged in dilutive financings or that he misused corporate funds not to pay off corporate debts, clearly those allegations of wrongdoing affected all the shareholders, and therefore they must be brought derivatively. That does not seem to be in dispute. And the derivative action is the mechanism by which shareholders can protect and preserve share value in light of allegations just like this. And the purpose of it is to preserve company resources and to avoid multiple actions. That is what the New Jersey Supreme Court told us. But even appellants' arguments that they suffered direct or special injuries is mistaken here. And I want to be clear about which causes of actions we're actually dealing with. The breach of contract and breach of fiduciary duty actions, as alleged in the amended complaint, clearly only allege that the wrongdoings that led to their injury were the dilutive financings and the corporate waste. Those are paragraphs 33 and 48 in the amended complaint. So those are clearly going to be derivative claims. And what we're left with, and is made clear by appellants' argument today, is the loan fraudulent inducement claim. But that claim, too, is derivative. The appellants here allege that they were provided with misrepresentations in the course of their negotiations with Mr. Botnikar. I don't quite understand that. It seems to me if he has alleged fraud or they have alleged fraud, they were induced to give up their position in a company, give up salaries, give up to waive rights in exchange for what they thought Mr. Botnikar would do. And it seems to me that those aren't corporate injuries, are they? Your Honor, I have a few responses to that. So I agree with the premise that that's if they did properly plead fraud. But separately speaking, the allegations of fraud here, if you look at what's actually- No, no, no, stay away from that. I want to know about the damages. If he alleges fraud, my question was, it's a hypothetical. If he alleges fraud, aren't the damages he alleges direct damages and not derivative? Your Honor, we don't believe so. The negotiations that were had between Mr. Botnikar and the appellants were in their capacity as the company. This was not outsiders to the company being induced to invest in a company. They gave up their positions. They gave up their salaries. They gave up their positions. And they altered their holdings or their relationship to the company in reliance on alleged fraud. Your Honor, all of these- Is that a personal damage to them? All of these representations were made in their capacity as the company in furtherance of company interests with the intent, ultimately, to preserve the share price. That jumps off the pages of the complaint. What the appellants were concerned with was the preservation of the share price. But what's- He alleged that Mr. Botnikar made those representations to them personally and that he's the one that induced them to change their relationship with the corporation based on fraudulent misrepresentations. And if there were fraudulent misrepresentations, it seems to me, if they relied on that and gave up some valuable position on the hope of a future promise again, that isn't damage to the corporation. It's damage to them and the change in their position. Well, Your Honor, ultimately, what they wanted to get out of all this was the preservation of the share price. But what I think is most important to point out here is that appellants understand this to be a company loss. After briefing this appeal, several of the appellants turned around and filed a derivative action in Maryland State Court alleging the same allegations of wrongdoing, the dilutive financing, these alleged misrepresentations, and they bring the same allegations of fraud, breach of contract, breach of fiduciary duty, and negligent misrepresentation against Mr. Bhatnagar brought by the same counsel. So in that derivative action that is ongoing, barreling towards a trial in January, the fraud count in that complaint says that the alleged misrepresentations were made to the company in breach of a duty owed to the company and that the company relied on these misrepresentations. Do they allege this? I'm sorry. No, go ahead. I was just going to say, can't both of those things be true? There can be misstatements made to the company before he became CEO on which the company relied, but you can also have individuals who were individually harmed. I mean, here, these debt equity conversion agreements were entered into in their individual capacities, and they could have individual claims for those particular damages. Now, maybe the way the fraud count is pleaded includes too much here, but they could plead, it would seem, an individual claim in addition to a company claim. You're not saying those are mutually exclusive, are you? Well, Your Honor, two things. First of all, this amended complaint is with the benefit of repleting. After we filed a pre-motion request with Judge Grimm, the appellants amended their complaint, and what you see now is with the benefit of repleting. But second, I would submit that that subverts the purpose of the derivative action. The derivative action is meant to preserve company resources and to avoid. So you're saying it is mutually exclusive, you can never have a claim, you can never have a fraud in the inducement claim brought by individuals as well as one based on misrepresentations to the company separately. I mean, there's separate agreements here, right? There's the transition agreement, which was entered into on behalf of the company, but these debt equity agreements appear to be personal. Well, that actually furthers our point, Your Honor. The debt equity agreements were with the company. This is how the company was responding. Based on what they say were misrepresentations. They were induced to enter these based on promises that he never said he would keep, that he didn't intend to keep. It's hard to plead intent, obviously, to plead facts that support someone's state of mind, but they say he didn't intend to keep these promises. Well, Your Honor, the entire purpose of these negotiations was for Enphase to hire a CEO. This was an Enphase negotiation to bring someone in, and the ultimate goal was to ensure that there were no dilutive financings. All of this, and again, this is a- So your position is that no matter how well they pleaded his state of mind, they just couldn't bring an individual fraud claim. This is all shareholder derivative. There's no way they could bring an individual claim. On the facts alleged in this complaint, there is no- our position is that there are only derivative claims, and that's really borne out in the- This is the paragraph I think is key, and you can tell me how you would read it. I'm looking at paragraph 39, which is part of the fraud count, and it says, as approximate result of defendant's fraudulent conduct, the value of plaintiff's shares in the company has declined significantly. That's where you're relying on, I think. And then it says, and plaintiffs have suffered additional substantial financial damages and a loss of legal rights. The question is, how do you construe that? Well, Your Honor, our position is that they suffered those as part of the company's decision to enter into this negotiated agreement with Mr. Bratnagar. All of these representations that they allege were made to them in the course of the negotiations, they were all then put into writing as part of a company agreement with Mr. Bratnagar. What's your best case, I guess, under New Jersey law for that proposition, that on these facts, no matter how well pled, and of course there's a separate issue as to whether or not the fraud claims have actually been sufficiently pled, but if you assume they are, and they've alleged what they claim to be the separate damage components that are unique to them personally, what's the best case in New Jersey law that suggests that that doesn't matter and this is all derivative? Your Honor, I would say it's the Strassenburg case. It's the New Jersey Supreme Court case from 1996, and that's kind of the foundational New Jersey case on derivative actions, and in that case the court makes clear that even if there's a disparate impact on the different shareholders, when what you're talking about in essence, and I think it says specifically the essence of their damage is a dilution of the share price, and that is what we contend is being alleged here. Ultimately, what these appellants wanted to accomplish from this hiring of Mr. Batnagar was an assurance that the share price would not be diluted. That may be true for the run-of-the-mill shareholder, but I think as my colleagues have pointed out, these were not run-of-the-mill shareholders. They were officers of the company. They gave up additional valuable consideration, I guess, which was unique to them, and so isn't that relevant to make it different? Your Honor, I would again point to the Strassenburg case and call it a disparate impact. Was that a case involving officers who gave up something unique to them as opposed to the common shareholder? There's no case that we found in New Jersey that has this exact back pattern, and the cases that appellants cited on this fraud and the inducement issue, whether that can be brought directly or derivatively, those cases are in a very different context when an outsider to a company is induced to enter into it. When there are outsiders... Just to focus that question a little bit, not on the general case holdings, but in this case, were the plaintiffs receiving a salary before these agreements? They alleged that they were. Yeah, and afterwards they did not, right? They alleged that they were no longer employees of the company. Okay. So if they alleged that they were getting salaries and that they voluntarily gave up those salaries based on fraudulent inducement, could they sue him, the person who alleged the fraud, Batnagar? Could they sue him for fraud? On these alleged facts, I don't believe so. On the facts I gave you, just the limited facts of they were induced to give up their jobs and their salaries by fraud. Your Honor, I think what matters is in what capacity they were having these negotiations. If they were... It doesn't matter. I mean, they personally gave up salaries. They got paid for a job. They resigned their jobs voluntarily pursuant to promises or misrepresentations. Now, if it was fraudulent misrepresentations, my question really is, isn't that not corporate injury but private injury where a lawsuit would lie? I mean, I don't understand where the derivative aspect comes in when the injury is not to the shareholder or to the corporation, but this is now an injury to an individual executive. Well, Your Honor, as the allegations themselves make clear, this entire transaction had the intended goal of preserving MFA's share price. And so the appellants themselves allege that everything that they did as part of the company's hiring of Mr. Batnagar was with the intent of preserving the share price and ensuring that there would be no dilution. And so I would call that essentially an allegation of share price preservation. That was ultimately their goal and ultimately a loss that had to be shared by the shareholders. It would have been a benefit that would have gone to all the shareholders had things not gone south. But I do want to point out that the appellants made this exact allegation of misrepresentations in their derivative action as misrepresentations to the company. Someone may have asked this, and I'm sorry if I didn't catch it, but did they plead that in the alternative? They did not, Your Honor. So that is clearly a derivative claim. These are the same representations, and they're alleged to have been made to the company. But can I ask you a question? I mean, we asked Mr. Costello some fairly pointed questions about the pleading of the claims, but that's not something that you're really focused on, either apparently before Judge Grimm or on appeal. So do you concede that these claims have been pled properly? We do not, Your Honor. Our focus is clearly on the derivative nature of these claims. We don't believe that appellants have standing. That's kind of a threshold issue. And Judge Grimm agreed and dismissed it on the standing issue, but we did plead in the alternative. Let me follow through a little bit on your theory based fairly on some of the allegations of the complaint. The argument is, I guess, that Batnagar made fraudulent statements to your clients, who were the executive crew of the company, in order to alter the course of the company's progress, financial progress. And as a result of that fraud, the company's stock went down, and that they're suing basically for the reduction of the shareholder's value. And that would be a derivative action. Yes, Your Honor. That is our position. Well, that is alleged. And so the question is, are we to then read that type of a claim? Let's say I agree it's at this point for discussion that it's derivative. They add one clause, and they say not only did they suffer loss of the value of the stock, the shares in the stock, but other compensatory damages without specification. That is what the Supreme Court, the New Jersey Supreme Court in Strasburg, says. There could be a disparate impact. And, in fact, all these cases talk about potential other direct damages to shareholders, and I think you can always point to something like that. There are incidental damages that could be borne elsewhere, and that's why the Strasburg. Well, is it fair to call it incidental here? Paragraph 14 of the complaint, they say prior management was not willing to transfer control, resign their positions, or agree to reduce or subordinate their debts without these promises. They make kind of the explicit allegation that these promises were made to them, and they specifically relied on them, and they would not have given up their positions and taken this debt transfer if they hadn't been made these promises personally. Yes, but I think either in that paragraph or subsequent to that, the amended complaint makes clear that the purpose of all of this was to preserve the share price and ensure that there would be no dilution. Why does that matter? Can't they be personally harmed? Can't they have an injury to their own interest? But also, you know, they were hoping that by doing this, that would benefit the company and shareholders would benefit too, but so shareholders might have a claim and they might have a claim. But again, I guess this just comes back to my mutually exclusive question. I don't quite follow your line of thinking that these can't coexist. Your Honor, I would then go back to the court in Strasburg's indication that you have to look at the essential injury that is alleged, and here we posit that the essential injury was the diminution of the share price. That was the injury that was ultimately what the appellants were trying to avoid in these discussions with Mr. Barnadar in terms of hiring him as CEO of the company. If the court has no further questions. All right. Mr. Costello, you have some rebuttal? Yes, Your Honor. First, I'd like to address my colleague's arguments that a derivative suit has been filed. That is accurate, and it was filed simply because this matters on appeal. We don't know when it's going to be resolved, and we had to file it to protect my client's rights. I don't think she was faulting you for filing it. I think she was making the point that the fraud claim is fraud caused to the corporation, and the damages were the diminution in the value of the stock, which would be a derivative claim. And the complaint seems to aim that way, although I've quoted sections that spin off from it, as has Judge Rushing. But it seems to me the question is what is your complaint about the fraud? And you do allege the only specific damage you allege is a reduction in the value of stock. Because you don't say loss of salaries or loss of position or anything else like that in your damage claim in the fraud suit. Paragraph 30 of the complaint outlines different categories of damages. And while I agree with Your Honor that there aren't specific dollar amounts for the share loss, the salary loss, the debt loss, the loss of voting control over the corporation, the loss of management control over a corporation, but they're all set forth those different categories in paragraph 30. And one case that I think, one thing my colleague and I agree on, is that the Strassenberg case is very instructive on this issue. And the reason for that is, you know, on page 549 onto page 550, if you're using the New Jersey site, the Strassenberg case quotes to a shareholder derivative litigation treatise. And the court specifically cites to and puts forth an example of when someone would be able to bring a direct action as a shareholder for loss of value of their shares. And the example that they give is exactly pled in our case where a director makes a specific direct misrepresentation to an individual shareholder. And in that context, the Strassenberg case says they may bring a direct action. That is directly on point. And those thoughts are echoed in the other Supreme Court New Jersey case Tully in which they say if someone makes, if you violate an individual duty to another individual and everyone has a duty not to commit fraud, not to make misrepresentations to individuals, if you violate that individual duty that you owe to those individuals, then you may bring a direct action. And that's exactly what we've pled. This is a minor question. I may have missed something. But can you help me understand how someone negligently misrepresents their state of mind? You know, I think the context would be testimony along the lines of this. You know, I didn't want to hurt anybody, but I felt like I had to do it anyway kind of thing, where here we are saying if Mr. Botnagar is going to take that position that he didn't mean to hurt anybody, well, then he was negligent because he didn't have a reasonable basis for making that promise as evidenced by the fact that he turned around three months later or four months later and broke it. The other thing I wanted to point out, my colleague is making several descriptions about what the complaint alleges that I respectfully disagree with. We filed a complaint. The complaint is supposed to be read in the light most favorable to us. The complaint alleges that several categories of damage has occurred here, not just the share loss. And again, if we focus on that Strasburg opinion and the specific example that they identify of a director speaking directly to a shareholder who misrepresents facts and the shareholder relies on that fact, the law of New Jersey says that shareholder can bring a direct action. The breach of contract claim is based on a third-party beneficiary theory that our clients, the shareholders, the directors, the management control require that those provisions, that price floor provision be in that transition agreement to protect them. The breach of fiduciary duty claim is not just based on the issuance of the convertible debentures, but the breach of fiduciary duty claim is also based on the fact that Mr. Botnagar, while he was CEO, was making active misrepresentations. Don't worry about these. You know, I'm going to pay them off and they're never going to be exercised. You don't have anything to worry about. And then does just the opposite. So in summation, we have specifically alleged direct action. We, my clients, want to pursue this as a direct action. And we feel like, you know, the authorities we've cited on the facts, alleged complaint satisfy the legal standard for them to bring a direct action. All right. Thank you, Mr. Costello. Appreciate your arguments. Our practice is to come down and shake your hands. And we're very proud of that practice. We have, during the pandemic, adopted a protocol where we're not doing that for health reasons. But when the two of you come back again someday, we'll shake your hand. And I'll remember you were here. Thank you for your arguments. We'll proceed on to the next case.
judges: Paul V. Niemeyer, Albert Diaz, Allison J. Rushing